UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MICHAEL J. HILL,

                              Plaintiff,

   v.                                                 9:19-CV-0826 (GLS/TWD)

G. JONES et al.,

                              Defendants.

---

APPEARANCES:

MICHAEL J. HILL
18-B-2416
Plaintiff, pro se
Southport Correctional Facility
P.O. Box 2000
Pine City, NY 14871

GARY L. SHARPE
Senior United States District Judge

## DECISION AND ORDER

**I.    INTRODUCTION**

Plaintiff Michael Hill commenced this action by filing a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application for leave to proceed in forma pauperis. Dkt. No. 1 ("Compl."); Dkt. No. 2 ("IFP Application"). By Decision and Order of this Court filed August 12, 2019, Plaintiff's IFP Application was denied pursuant to 28 U.S.C. § 1915(g) based on the Court's determination that Plaintiff has three strikes and is not entitled to the "imminent danger" exception. Dkt. No. 4 (the "August 2019 Order"). Plaintiff was advised that this action would be dismissed unless, within thirty (30) days he either (i) paid the Court's filing fee of four hundred dollars ($400.00) in full, or (ii) filed an

amended complaint demonstrating that he faced an "imminent danger of serious physical injury" from the named defendant(s) when he commenced this action. *Id*. at 10-11.

Presently before this Court is Plaintiff's Amended Complaint. Dkt. No. 5 ("Am. Compl."). Plaintiff has not paid the filing fee.

## II.     IFP STATUS

The legal standard governing the "imminent danger" exception to the "three-strikes" rule set forth in 28 U.S.C. § 1915(g) was discussed at length in the August 2019 Order, and it will not be restated in this Decision and Order. Dkt. No. 4 at 4-6.

In his original Complaint, Plaintiff asserted Eighth and Fourteenth Amendment claims arising out of his confinement with the New York State Department of Corrections and Community Supervision (DOCCS) at Cayuga Correctional Facility ("Cayuga C.F.") and Auburn Correctional Facility ("Auburn C.F."). *See generally* Compl. After determining that Plaintiff had accumulated "three strikes" before filing his Complaint, the Court considered Plaintiff's allegations solely for purposes of evaluating whether they were sufficient to qualify him for the "imminent danger" exception of 28 U.S.C. § 1915(g), and found that they were not. *Id.* at 6-10. In the August 2019 Order, the Court reasoned that, because Plaintiff was incarcerated at Auburn C.F. at the time he filed the Complaint, any "allegations of wrongdoing at Cayuga C.F., even if true, do not demonstrate that Plaintiff faced an 'imminent danger of serious physical injury' from the Cayuga C.F. defendants when he filed this action." *Id*. at 8. Concentrating on the allegations related to wrongdoing at Auburn C.F., the Court concluded:

> With respect to the claims related to Plaintiff's confinement at
> Auburn C.F., construing the Complaint with the leniency that

2

> the Court must afford a pro se litigant, *see Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996), Plaintiff's allegations do not plausibly suggest that he faced "imminent danger" of "serious physical injury" when he signed the Complaint in July 2019. Plaintiff claims he suffered from "excruciating pain" in his "ribs, lower back, and arm" that "made it difficult to stand straight up." *See* Compl. at 10-11. While Plaintiff claims that Geer and Lumbard were deliberately indifferent to his medical needs, notably absent from the Complaint are facts related to when Plaintiff was transferred to Auburn C.F., when he requested treatment from Geer and Lumbard, and how frequently Plaintiff requested medical treatment. *See id.* Indeed, Plaintiff does not allege that Geer and Lumbard refused to provide medical treatment, but claims that Lumbard and Geer denied his requests for pain medication, x-rays, and MRI films. *See id*. Plaintiff's Eighth Amendment claims against Lumbard and Geer are seemingly based upon a disagreement over the appropriate care or treatment, which is not actionable under 42 U.S.C. § 1983. *See Mason v. Dolan*, No. 09CV791, 2010 WL 2889542, at *2 (W.D.N.Y. July 21, 2010) (finding that the plaintiff's disagreement with officials "regarding the appropriate treatment for his physical disability, does not suffice without more to constitute an allegation of an imminent danger of serious physical injury").
>
> And, while Plaintiff asserts facts related to his conditions of confinement in the SHU, the Complaint is devoid of any facts suggesting Geer or Lumbard were personally involved in his conditions of confinement in the SHU. Simply put, Plaintiff has not plead how the named defendants were personally involved in decisions related to Plaintiff's SHU confinement.

*Id.* at 9. Consequently, the Court held that Plaintiff failed to plead that he faced imminent danger as described by Section 1915(g) and his IFP Application was denied. *Id*. at 11.

In the Amended Complaint,[1] Plaintiff has expanded upon the alleged excessive force incident at Cayuga C.F. and the constitutional claims against the defendants associated with

---

[1] The Amended Complaint includes exhibits. Dkt. No. 5-1. To the extent that the exhibits are relevant to the incidents described in the Amended Complaint, the Court will consider the Amended Complaint as well as any documents attached as exhibits. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) (explaining that the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

3

Cayuga C.F. Am. Compl. at 5-14, 17-25. As discussed in the August 2019 Order, even assuming the truth of these allegations, these facts do not plausibly suggest that Plaintiff faced an "imminent danger of serious physical injury" when he filed this action because any danger posed by the Cayuga C.F. defendants' alleged misconduct had dissipated by the time Plaintiff signed the Complaint. Dkt. No. 4 at 8.

Plaintiff also alleges new facts related to confinement at Auburn C.F. Am. Compl. at 14-17. Plaintiff claims that he was transferred to Auburn C.F. on June 13, 2019. *Id.* at 14. On June 15, 2019, Plaintiff requested sick call for complaints of pain when standing, moving and breathing. *Id*. Defendant Registered Nurse Lombard[2] ignored Plaintiff's request and refused to provide treatment. *Id*. On June 16, 2019, Lombard stopped at Plaintiff's cell and documented "his issues," but walked away without providing any treatment. *Id*. On June 19, 2019, Lombard and defendant Doctor D. Geer refused to "acknowledge" Plaintiff's injuries and refused his requests for an x-ray. *Id.* at 14. Lombard and Geer prescribed "non-aspirin," but the medication did not alleviate Plaintiff's pain. *Id.*

Plaintiff seeks declaratory relief, monetary damages, and injunctive relief directing Defendants to: (i) conduct an MRI of his neck, shoulder, spine, lower back and ribs; (ii) refer him to an outside specialist to determine the "possibilities of paralyzation;" and (iii) provide him with pain medicine other than "non-aspirin pills." *Id.* at 25-28.

Construing the Amended Complaint liberally, Plaintiff alleges that he faced imminent danger as a result of the lack of medical treatment by Lombard and Geer for his "injuries and the serious pain he was suffering." *Id.* at 16. Plaintiff claims that Lombard and Geer

---

[2] In the Amended Complaint, Plaintiff refers to defendant as "Lombard." Accordingly, the Clerk of the Court is directed to amend the docket accordingly.

"documented in medical records and stated that [Plaintiff] had no injuries and suffered no pain that warranted an x-ray or MRI." *Id.* at 16-17. Despite Plaintiff's allegations, the medical records, which were submitted by Plaintiff as an exhibit to his Amended Complaint, belie this argument. Upon his admission to the Auburn C.F. Special Housing Unit (SHU), Plaintiff's complaints of rib pain were relayed to the "provider." Dkt. No. 5-1 at 3. On June 16, 2019 and June 18, 2019, Plaintiff was treated at sick call for complaints of rib and back pain and received analgesic balm and Vitamin E lotion.[3] *Id*. at 4-5. On June 19, 2019, Plaintiff was examined by Geer. *Id.* at 5. Plaintiff reported that he was assaulted on June 13, 2019 and complained of pain in his rib cage, lower back, shoulders, and neck. *Id.* Plaintiff requested "full body xrays to document what the officers did to [him]." *Id*. Geer noted that Plaintiff walked down the SHU corridor without difficulty and explained to Plaintiff that he would not "do xrays to document injuries" but that "there must be a medical indication and he has not [sic]." *Id.* Geer prescribed Tylenol. *Id.* On June 20, 2019, one week after Plaintiff arrived at Auburn C.F., he was treated at emergency sick call for complaints of rib and back pain.[4] *Id.* at 6. Plaintiff underwent x-rays of his cervical spine and received acetaminophen. *Id*. at 6, 10. On June 30, 2019, ten days before Plaintiff filed this action, he was treated at sick call for back and rib pain and requested Ibuprofen. *Id*. The provider noted that Plaintiff had a "documented NSAID allergy" and denied his request for Motrin. *Id.* at 6.

As presently pleaded, Plaintiff's allegations related to inadequate medical care from Lombard and Geer do not allege an imminent danger of serious physical injury. *See*

---

[3] The names of the medical providers are illegible.

[4] The name of the medical provider is illegible.

5

*Escalera v. Graham*, No. 9:08-CV-0412, 2008 WL 4181741, at *3 (N.D.N.Y. May 27, 2008) ("Plaintiff's allegation about not receiving adequate care for his eczema through the provision of unspecified 'medications' and a 'medical shower' hardly alleges an imminent danger of serious physical injury." (citation omitted)). Plaintiff was seen by the medical staff at Auburn C.F. for complaints related rib and back pain and received medication, medical advice, and diagnostic x-rays. Plaintiff does not allege that he was not treated by the medical staff at Auburn C.F. or that he was completely denied medical care. As discussed in the August 2019 Order, Plaintiff's claims against Geer and Lombard amount to nothing more a disagreement over the course of treatment, which does not create a constitutional claim. *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). Although Plaintiff claims that the defendants ignored his complaints, an inmate is not entitled to the treatment of his choice. *See id.* at 702. Defendants' unwillingness to order x-rays or prescribe medication other than "non-aspirin," does not create an Eighth Amendment claim. *See Guarneri v. Wood*, No. 08-CV-792, 2011 WL 4592209, at *13 (N.D.N.Y. September 2, 2011) ("Defendants regularly offered [the plaintiff] non-narcotic pain medication . . . . [The plaintiff]'s complaints about the type of medication given to him for pain again amounts to a disagreement over treatment, which is insufficient to allege a constitutional violation."); *see also Curtis v. Williams*, No. 11 Civ. 1186, 2013 WL 1915447, at *7 (S.D.N.Y. May 9, 2013) (citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)) ("[A] medical decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment."); *Echevarria v. Canfield*, No. 12CV129A, 2014 WL 174109, at *4 (W.D.N.Y. Jan 13, 2014) (reasoning that the refusal to order an MRI of plaintiff's back does not amount to deliberate indifference).

To the extent Plaintiff has based his "imminent danger" claim on the alleged delay in providing him with x-rays, such allegations are insufficient to plausibly suggest that, at the time plaintiff commenced this action – i.e., after he received x-rays – he remained in "imminent danger" of suffering a serious physical injury. *See Malik v. McGinnis*, 293 F.3d 559, 562-63 (2d Cir. 2002) ("Because § 1915(g) uses the present tense in setting forth the imminent danger exception, it is clear from the face of the statute that the danger must exist at the time the complaint is filed[,]" and that the exception does not apply to "those harms that had already occurred." (internal quotation marks and citations omitted)). Furthermore, to the extent Plaintiff's allegations may be construed to suggest that he has been denied medical treatment for a serious medical condition as a result of an assault that occurred at Cayuga C.F., there is no basis for inferring that any such alleged "imminent danger" is "fairly traceable" to the actions of Lombard and Geer. *See Pettus v. Morgenthau*, 554 F.3d 293, 298 (2d Cir. 2009) (noting that "the complaint of a three-strikes litigant must reveal a nexus between the imminent danger it alleges and the claims it asserts, in order for the litigant to qualify for the 'imminent danger' exception of § 1915(g)").

In short, as with the Complaint, the Amended Complaint lacks any allegations which plausibly suggest that Plaintiff was at risk of suffering a serious physical injury when he commenced this action as a result of not receiving his desired medical treatment. As a result, the Amended Complaint affords no basis for invoking the "imminent danger" exception of 28 U.S.C. § 1915(g).

Because Plaintiff has already been afforded an opportunity to amend his Complaint, if he wishes to proceed with this action he must, within thirty (30) days of the filing date of this

7

Decision and Order, pay the statutory filing fee of four hundred dollars ($400.00) in full.[5] Plaintiff is advised that his failure to timely comply with this Decision and Order will result in the dismissal of this action, without prejudice, without further Order of this Court.

## III. CONCLUSION

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the Clerk of the Court shall amend the docket to substitute "Lombard" for "Lumbard"; and it is further

**ORDERED** that this action shall be **DISMISSED** unless, within thirty (30) days of the date of this Decision and Order, Plaintiff pays the Court's filing fee of four hundred dollars ($400.00) in full; and it is further

**ORDERED** that, upon Plaintiff's compliance with this Decision and Order, the Clerk of the Court shall return the file to this Court for review[6]; and it is further

**ORDERED** that, if Plaintiff fails to timely comply with this Decision and Order, the Clerk of the Court is directed to enter judgment dismissing this action, without prejudice, without further order of this Court; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on Plaintiff in accordance with the Local Rues of Practice.

**IT IS SO ORDERED.**

September 11, 2019
Albany, New York

Gary L. Sharpe
Gary D. Sharpe
U.S. District Judge

---

[5] The $400.00 filing fee consists of the civil filing fee of $350.00, *see* 28 U.S.C. § 1914(a), and an administrative fee of $50.00.

[6] In the event Plaintiff pays the filing fee in full, the Court shall undertake a review of the sufficiency of the allegations in the amended complaint in accordance with 28 U.S.C. § 1915A.

8